IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID PIERGROSSI, | )<br>) |
| Plaintiff, | ) Civil Action No. 17-1575<br>) Chief Magistrate Judge Maureen P. Kelly |
| v. | )<br>) Re: ECF Nos. 16, 22 |
| DR. PAUL NOEL and DR. MICHAEL HERBIK, | )<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

**Chief United States Magistrate Judge Maureen P. Kelly**:

Plaintiff David Piergrossi ("Plaintiff") is an inmate currently incarcerated in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Fayette ("SCI – Fayette"). On December 1, 2017, Plaintiff commenced this counseled civil rights and negligence action pursuant to 42 U.S.C. § 1983 and Pennsylvania state law, asserting claims against Dr. Paul Noel ("Dr. Noel"), the Pennsylvania DOC Bureau of Health Care Services Chief of Clinical Services, and Dr. Michael Herbik ("Dr. Herbik"), the contracted medical director at SCI – Fayette. Plaintiff alleges that as a result of initially denying and otherwise delaying treatment for his chronic hepatitis C infection, Defendants violated his rights under the Eighth Amendment of the United States Constitution and otherwise were negligent in their provision of medical care. ECF No. 1.

Presently before the Court is a Motion for Summary Judgment, ECF No. 16, filed on behalf of Dr. Noel, and a Motion to Dismiss Complaint or, in the alternative, Motion for Summary Judgment, filed on behalf of Dr. Herbik. ECF No. 22. The Motions raise Plaintiff's

1

alleged failure to exhaust available administrative remedies and, as argued by Dr. Herbik, Plaintiff's failure to assert his claims within the applicable statute of limitations. For the reasons that follow, Defendants' motions are denied.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is 55 years old and has been incarcerated in DOC facilities at various times throughout his adult life for a total of approximately fifteen years. Plaintiff currently is incarcerated pursuant to a sentence imposed in May 2015. ECF Nos. 19, 29. Upon entering the DOC system in 2015, SCI-Fayette medical officials were aware that Plaintiff was suffering from Hepatitis C ("HCV"), and was not under treatment. Plaintiff alleges his requests for treatment were denied. The record of this matter indicates that Plaintiff submitted his first grievance related to the denial of medical treatment for HCV, Grievance No. 665565, on February 20, 2017.

The pending motions turn on Plaintiff's compliance with applicable DOC Grievance Policy provisions. Accordingly, reference is made to the relevant requirements for the submission of a grievance in effect at the time, which are explained to all inmates in the DOC Inmate Handbook:

> The inmate must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based.
>
> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> > The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 13 and 15.

ECF No. 17 at 7, ECF No. 19 ¶¶ 13, 17.  If the inmate is not satisfied with the Grievance Coordinator's response, DC-804 requires the inmate to submit a timely written appeal to intermediate review within fifteen working days, and a written response is to be provided to the inmate within fifteen working days. ECF No. 17 at 17-18.  If the inmate remains dissatisfied with the response, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen days.  Id. at 20.

In the instant case, Plaintiff stated in the relevant part of Grievance No. 665565, dated February 20, 2017, as follows:

> I am filing this Grievance because the continued refusal of DOC to treat my hepatitis C is causing me ongoing health problems, including [varices], fluid retention, gallbladder attacks, dizziness, loss of appetite, loss of weight, forgetfulness, elevated blood [ammonia] levels, depression, anxiety and vision problems…..
>
> The Hepatitis C from which I suffer is causing on-going and irreversible damage to my liver. I have cirrhosis and varicies (very large) EV and FV and a [gallbladder] loaded with stones.  And been placed at a much greater risk of developing hepatocellular carcinoma, as well as increased risk of death.

ECF No. 17 at 40, 48-49.  Plaintiff further stated that he had been seen by Dr. Herbick and the Hepatitis C Clinic "at least 6 times" for treatment.  Plaintiff requested treatment with Direct-Acting Antiviral ("DAA") medication and monetary compensation.  Id. at 49.

Plaintiff's grievance was denied as untimely because Plaintiff failed to submit it "within 15 days after the events giving rise to the claims alleged." Id. at 41, 47. This disposition was upheld by the Facility Manager, who noted both that the grievance was not submitted within 15 days of the events upon which the claim is based, and did not reference a specific date to determine when the event occurred. Id. at 44. Plaintiff was reminded that while the Grievance

3

Policy permits resubmission of a grievance within 5 days of initial rejection to correct any error, Plaintiff had failed to resubmit his grievance, and "chose instead to appeal the rejection." Id.

Plaintiff filed a timely appeal to final review to the SOIGA. SOIGA's Chief Grievance Officer affirmed the grievance denial on the basis that Plaintiff "failed to provide a date to prove timeliness of this issue." Id. at 43. The Chief Grievance Officer noted that Plaintiff had filed a second grievance No. 672757, which specified a date of harm ("today, April 11, 2017"). See ECF No. 17 at 52. Because the second grievance included the required information, the Chief Grievance Officer upheld the denial of Grievance No. 665565, and stated that Plaintiff would be provided a response to his underlying complaint in conjunction with the disposition of Grievance No. 672757. Id. at 43.

In Grievance No. 672757, Plaintiff alleged that the DOC failed to provide any treatment for his HCV for the period May 2015, through the date of his grievance, April 11, 2017. ECF No. 17 at 55-56. Plaintiff reiterated the physical effects of being denied treatment and indicated that he was most recently denied treatment because of the results of urinalysis. Plaintiff contended that the urinalysis does not provide a medical basis for excluding him from treatment. Plaintiff again requested monetary compensation for the damages caused by the delay and continued denial of treatment. Id. at 56.

The Health Care Administrator charged with reviewing Grievance No. 672757 issued a denial in response. She indicated that Plaintiff had been approved to receive treatment, but had other medical issues that had to be addressed first, including anemia, blood in his stool, and varices. Id. at 53. Further, several tests were ordered, but Plaintiff refused to have a CT scan completed in February 2017, and subsequently informed the Infectious Control Nurse that he wanted treatment to be discontinued. Plaintiff confirmed his decision with Dr. Herbik, and the

treatment plan was abandoned. The Grievance response indicates that on February 11, 2017, Plaintiff received a misconduct for a positive urine screening for illicit drugs. Based on the results of the screening, and pursuant to DOC policy, the Heath Care Administrator indicated that Plaintiff was no longer eligible for treatment for 12 months. Id.

Plaintiff submitted a timely appeal to the Facility Manager, stating that the positive drug screen should not have a role in the medical decision to treat his HCV. Plaintiff cited the availability of clinical data indicating that drugs and alcohol do not negatively impact on the efficacy of DAA medication. Plaintiff also challenged the Health Care Administrator's characterization of his refusal to undergo a CT Scan, indicating that another physician agreed with his rationale and ordered an ultra-sound, which was completed during the first week of April 2017. Id. at 51. On May 22, 2017, the Facility Manager upheld the denial of Grievance No. 672757, finding that in accordance with DOC policy, Plaintiff was appropriately excluded from Hepatitis C treatment as a result of the drug-related misconduct received on February 11, 2017. Plaintiff did not appeal the intermediate level decision for final review to the SOIGA.

On May 11, 2017, eleven days before the Facility Manager's response, Plaintiff's counsel received an email informing him that Plaintiff would begin to receive HCV treatment with DAA medication in thirty days. ECF No. 28 at 21. Plaintiff began receiving treatment on July 19, 2017, and concluded treatment in October 2017. ECF No. 1 ¶ 66. Accordingly, Plaintiff's action seeks recovery for the exacerbation of Plaintiff's condition, including liver damage, worsening cirrhosis, and other manifestations of the illness that occurred as a result of the delay in treatment.

## II. STANDARD OF REVIEW

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. McGreevy, 413 F.3d at 363; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). As to materiality, the relevant substantive law identifies which facts are material. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

## III. DISCUSSION

### A. Failure to Exhaust – Procedural Default

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing suit in court. 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust such administrative remedies as are available before bringing suit to challenge prison conditions." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1854–555 (2016) (internal citation omitted); see also Booth v. Churner, 532 U.S. 731 (2001) (same).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The PLRA also mandates "proper exhaustion" of all the agency's deadlines and other procedural rules pertaining to its administrative remedy process. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" as they are "defined ... by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Ngo, 548 U.S. at 93). "[I]t is the prison's [administrative remedy] requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218. Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.3d at 227–32; see also Williams, 482 F.3d at 639 (inmate "procedurally defaulted" when he failed to comply with the requirements of the prison's grievance procedures).

Finally, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." Small v. Camden Cty., 728 F.3d 265, 269 (3d Cir. 2013).

In the present matter, Defendants argue that because Plaintiff invoked the phrase "continued refusal" in his Grievance to describe the timing of Defendants' failure to provide HCV treatment, Plaintiff failed to satisfy all elements of the DOC grievance process, which requires that a grievance specify an incident "date." As a result of this omission, and despite the fact that Plaintiff dated the form, Defendants argue Plaintiff failed to properly exhaust available administrative remedies prior to filing this action, barring his pursuit of claims in this Court pursuant to the PLRA. ECF No. 32 at 7-8.

The Court finds Defendants' position unpersuasive. "Continued" imports an "ongoing" activity or process, something occurring "without a break in continuity." See e.g. https://en.oxforddictionaries.com/definition/continued. In this instance, the Court finds Plaintiff's use of the phrase "continued refusal" refers to and includes the date of the grievance, and thereby adequately places prison officials on notice of the date of the grieved of conduct, *i.e.,* February 20, 2017, as well as the continuing nature of the conduct at issue. Accordingly, Plaintiff has substantially complied with DOC procedural requirements. The Court further finds that this grievance was timely appealed through all required levels of review and thus Plaintiff has literally and properly exhausted all available administrative remedies so as to preserve Plaintiff's claims for judicial review pursuant to the PLRA.[2]

---

[2] The Court's finding with regard to Grievance No. 665565 renders unnecessary detailed discussion of Plaintiff's failure to appeal for final review Grievance No. 672757. Plaintiff contends that because monetary relief is not afforded through the grievance process, his failure to appeal Grievance No. 672757 to the SOIGA cannot constitute procedural default. However, the law is clear that exhaustion is required under the PLRA regardless of the type of relief sought and the type of relief available through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001). Complete exhaustion is mandatory even if a prisoner is only seeking monetary damages. Smith v. Maiorana, 629 F. App'x 402, 405 (3d Cir. 2015) (citing Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000)). In this

### B. Statute of Limitations

Dr. Herbick seeks the entry of summary judgment on the alternative ground that Plaintiff's Complaint was filed beyond the applicable statute of limitations. Plaintiff's claims regarding the denial of medical treatment are asserted pursuant to Section 1983 and Pennsylvania negligence law. Pennsylvania's statute of limitations requires such personal injury claims to be brought within two years of the accrual of the claim. 42 Pa.C.S.A. § 5524(7). In this instance, it is apparent that Defendants most recently declared Plaintiff ineligible for treatment with DAA medication due to a drug-related misconduct received on February 11, 2017. ECF No. 17 at 50. Plaintiff's Complaint was filed on December 1, 2017, well within two years of February 2017. Accordingly, Defendant Herbik's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment raising the statute of limitations is denied.

### IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed on behalf of Dr. Paul Noel is properly denied, and the Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed on behalf of Dr. Michael Herbick is denied. Accordingly, the following Order is entered:

---

instance, it is not disputed that Plaintiff failed to appeal the denial of Grievance No. 672757 to the SOIGA, and therefore, in the absence of complete exhaustion as to Grievance No. 665565, Plaintiff would be precluded from recovery of monetary damages. The interim grant of HCV treatment does not change this result, inasmuch as Plaintiff also seeks monetary relief as compensation for the worsening of his condition.

**ORDER**

AND NOW, this 17th day of May, 2017, upon consideration of the Motion for Summary Judgment filed on behalf of Dr. Paul Noel, ECF No. 16, and the Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed on behalf of Dr. Michael Herbick, ECF No. 22, as well as the briefs and exhibits filed in support and opposition thereto, it is HEREBY ORDERED that said Motions are DENIED.

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing